**Denise Joann NELSON, Appellee,**

v.

**Raymond STEINER, William Moody, Robert E. Foust and City of Des Moines, Iowa, Appellants.**

No. 59253.

Supreme Court of Iowa.

Feb. 22, 1978.

David J. Welu, Asst. City Atty., Des Moines, for appellants.

Nicholas V. Critelli, Jr., Des Moines, for appellee.

Considered by MOORE, C. J., and MASON, RAWLINGS, REES and UHLENHOPP, JJ.

MASON, Justice.

Defendants appeal from judgment rendered on a jury verdict finding individual

defendants liable for false arrest and imprisonment and finding defendant, City of Des Moines, liable for injury to plaintiff, Denise Joann Nelson, caused by its employees' tortious conduct.

At all times material herein defendants, Raymond Steiner, William Moody and Robert E. Foust, were employed as police officers by defendant, City of Des Moines, a municipal corporation organized and existing by virtue of the laws of Iowa.

October 28, 1974, plaintiff commenced the action in the Polk District Court which gives rise to this appeal. In division 1 of her petition plaintiff alleged as a claim for relief defendants, City, Steiner and Moody, falsely arrested and imprisoned her on the charge of public intoxication, a misdemeanor. In division 4 she alleged defendants, City and Foust, falsely arrested and imprisoned plaintiff on the charge of illegal possession of a prescription drug, an indictable offense.

In divisions 2, 3 and 5 plaintiff sought recovery against defendant City, the officers' employer. In each of these divisions plaintiff alleged that at the time of the acts complained of the individual defendants were acting in their capacity and with the apparent authority of a police officer of Des Moines.

In answer defendants denied plaintiff's claims and affirmatively alleged her arrest was accomplished with probable and reasonable cause. Defendants filed a motion for summary judgment in which they sought to dismiss plaintiff's action against the police officers. Defendants' motion was overruled and the case proceeded to trial.

In motions for directed verdict made at the close of plaintiff's evidence and renewed at the close of all evidence defendants sought dismissal of plaintiff's action against the police officers. The motions were overruled.

Over defendants' objection the court instructed the jury that current or prior arrests are public records and as such may be published by the news media.

The jury returned a verdict of $9,110.00 against Steiner, Moody and the City and $19,750.00 against Foust and the City. Defendants filed a motion for judgment notwithstanding the verdict and in the alternative a motion for new trial. These motions were overruled.

The facts underlying plaintiff's claim for relief and the incidents giving rise to defendants' appeal will be set out where necessary herein.

The issues as framed by the parties are as follows:

1. Did the trial court err in overruling defendants' motions for summary judgment and directed verdict by holding that municipal employees and the municipality may be parties to an action for damages proximately caused by the tortious conduct of the employee in the scope of his employment?

2. Did the trial court err in instructing the jury current and prior arrests are public records that may be published by the news media?

3. Was the verdict of the jury flagrantly excessive or lacking in evidentiary support?

■ 1. Defendants contend the trial court erred in overruling their motions for partial summary judgment and for directed verdict. On appeal we are only concerned with the portion of these motions aimed at dismissing the action asserted in divisions 1 and 4 of the petition against the police officers. Defendants argued, as they do on appeal, the last unnumbered paragraph of section 613A.4, The Code, makes a claim for relief against a municipality only the exclusive remedy where the officers or employees of the municipality were acting within the scope of their employment and all claims for relief arise by reason of the same tortious conduct.

Although the last unnumbered paragraph of section 613A.4 as it appears in the 1977 Code has changed slightly from 1973 when the claim for relief herein arose, the thrust of the section remains the same. In pertinent part the 1973 version was as follows:

"The remedy against the municipality provided by section 613A.2 for injury *  *

resulting from any act or omission of an officer or employee * * * while acting in the scope of his office or employment shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against the officer or employee whose act or omission gave rise to the claim, or his estate."

Defendants contend no Iowa cases specifically interpret the paragraph at issue but that support for their argument can be found in federal cases interpreting 28 U.S.C.A. section 2679(b). That section is as follows:

"(b) The remedy by suit against the United States as provided by section 1346(b) of this title for damage to property or for personal injury, including death, resulting from the operation by any employee of the Government of any motor vehicle while acting within the scope of his office or employment, shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against the employee or his estate whose act or omission gave rise to the claim."

Defendants argue interpretation of section 2679(b) is applicable to the issue at hand because that section and section 613A.4 of our Code are similar. They cite the following cases wherein the courts dismissed suit as to the agent or employee of the United States government because under section 2679(b) they were immune to suit: *Gustafson v. Peck*, 216 F.Supp. 370, 372–373 (N.D.Iowa 1963); *Perez v. United States*, 218 F.Supp. 571, 574 (S.D.N.Y.1963); and *Santoro v. United States*, 229 F.Supp. 707, 708 (N.D.Ill.1964).

We agree section 2679(b) is similar to section 613A.4 and that the federal statute has been interpreted to provide that the exclusive remedy of an injured party is against the United States. We do not, however, find the interpretation of the federal statute to be in any way binding upon this court because the federal statutory scheme providing for tort claims against the United States government is not similar in this instance to the Iowa tort claims system.

There is no section of the Federal Tort Claims Act (28 U.S.C.A. sections 1291, 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412 and 2671 et seq.) that is analogous to our section 613A.8. In 1971 that section provided as follows:

"The governing body shall defend any of its officers and employees, whether elected or appointed and, except in cases of malfeasance in office or willful or wanton neglect of duty, shall save harmless and indemnify such officers and employees against any tort claim or demand, whether groundless or otherwise, arising out of an alleged act or omission occurring in the performance of duty."

This section has remained substantially the same to this day.

In interpreting that section, this court stated in *Vermeer v. Sneller*, 190 N.W.2d 389, 391–392 (Iowa 1971):

"It is true that § 613A.8 provides for indemnification of the employee by the municipality, except in cases of malfeasance in office or willful or wanton neglect of duty. There is nothing in chapter 613A, Code, 1971, indicating it was the legislature's intent to abolish the right of an injured party to sue a municipal employee for the employee's negligence. Indeed, if this court were to follow the reasoning of defendants we would have the anomalous situation of a statute which on one hand strikes down a municipality's immunity from liability, and on the other hand abolishes a long recognized cause of action against an individual municipal employee for his negligent acts.

"Because it provides for indemnification for an employee's liability, § 613A.8 implies an employee can be held liable in an individual cause of action. * * *

" * * * *

"A cause of action against a municipal employee individually, for his negligence, has long been recognized in Iowa."

In a case dealing more directly with defendants' contention, *Cowman v. LaVine*, 234 N.W.2d 114, 122–123 (Iowa 1975), we stated:

"We are unable to perceive merit in defendant's contention plaintiff's cause of action existed exclusively against the City of Des Moines. It is true that § 613A.4, The Code, 1971, as defendant interprets it, would support his position. * * *. In *Vermeer v. Sneller,* * * * (Citation), we held there was nothing in Chapter 613A, Code 1971, indicating it was the legislature's intent to abolish the right of an injured party to sue a municipal employee for the employee's negligence. We found support for such conclusion in § 613A.8, * *. Because § 613A.8 provided for indemnification of an employee's liability, we found it implied strongly that an employee may be held liable as an individual. Although the matter before us was not predicated on a theory of negligence, as was *Vermeer,* we believe the reasoning of *Vermeer* is equally applicable here."

Contrary to defendant's contention, we find *Vermeer* and *Cowman* do interpret the last unnumbered paragraph of section 613A.4. These cases are dispositive of the issue herein. There is nothing in chapter 613A preventing suit against both a municipal employee and the municipality by which he is employed. We find section 2679(b) of the Federal Tort Claims Act and the interpretations of that section by federal courts are not applicable to the case before us.

The trial court did not err in overruling defendants' motions for summary judgment and for directed verdict as to the claims for relief asserted against the police officers individually.

■ II. Defendants contend the trial court erred in submitting its instruction 16 to the jury. That instruction told the jury:

"You are instructed that under the laws of the State of Iowa, records of current and prior arrests are public records, and every citizen of the State of Iowa shall have the right to examine and copy such records, and the news media may publish such records. However, criminal identification files of police records are not open to the general public."

We point out a rather unorthodox approach to the noting of the attorneys' objections to the court's instructions was utilized here. Apparently, the court met with the attorneys and discussed off-the-record its proposed instructions with them. During this discussion it noted, considered and overruled their objections. The court then read the instructions to the jury and had it begin deliberation. Then the court met with the attorneys and allowed them to raise their previous objections on the record. This procedure was apparently followed with the attorneys' consent.

During the making of the record of the objections the following incident occurred:

"THE COURT: Does that complete it?

"MR. WELU: Defendants have a further objection to Instruction No. 16 for the reason that it includes the fact that current or prior arrests are public records and that they—that the news media may publish such records. The defendants object to the reference to the news media for the reason there is no evidence in the record concerning any publication in the news media.

"THE COURT: I took it from the statute. [Section 68A.2, The Code]. In our preliminary discussion if you would have asked for it to be taken out I would have taken it out. It was in the statute.

" * * *

"THE COURT: Let the record show that the objections are overruled, each and every one individually, for all the reasons stated."

It appears defendants' counsel made an on-the-record objection to instruction 16 that he had not previously raised in the prior off-the-record discussion. He repeated his objection in his alternative motion for new trial.

Plaintiff obliquely raises a question as to the preservation of any error by defendants' objection by pointing out to this court the objection was made after the instructions were read to the jury.

In *Pose v. Roosevelt Hotel Company,* 208 N.W.2d 19, 25, 64 A.L.R.3d 860, 867–868 (Iowa 1973), we stated:

"Of course, only matters objected to before the instructions are read to the jury and the particular grounds for objection(s) are to be considered by this court.

" * * *

"This rule [R.C.P. 196] directs, in part, that all objections to instructions must specify the objectionable matter, on what grounds and none other will thereafter be considered. It is incumbent on the objecting party to point out wherein he contends the instruction is wrong so the trial court may have opportunity to correct it.

"The rule (R.C.P. 196) is just as definite in requiring objections to the refusal of requested instructions to specify the grounds thereof as is required of objections to instructions actually given.

"In determining the sufficiency of an attack on an instruction to preserve any alleged error for review in this court the criterion is whether the exception alerted the trial court to the error which appellant is now urging."

In the present case defendants' opportunity to raise objections to instructions occurred in the off-the-record discussion. It is clear they raised objections during this discussion. The purpose of the subsequent discussion was to make a record of the objections raised previously.

The objection raised by defendants in the on-the-record discussion was not timely. It was raised for the first time after the court had instructed the jury. The objection then was too late to apprise the court of its error, if any, so that it might properly instruct the jury. The fact defendants raised the objection in their alternative motion for new trial does not preserve any error. It was again too late.

The procedure followed by the trial court herein is not objected to by defendants. We need not decide, therefore, whether it was erroneous.

Because error was not preserved this court will not consider whether the trial court committed error by submission to the jury of its instruction 16.

III. Defendants insist the jury verdict was excessive and lacking in evidentiary support. In *Olsen v. Drahos,* 229 N.W.2d 741, 742–743 (Iowa 1975), this court set forth the rules which guide us when confronted with contentions such as these:

"The applicable legal principles are well established by a long line of our cases. The assessment of damages is traditionally a jury function. Its decision should be disturbed only for the most compelling reasons. We will reduce or set aside a jury award only if it (1) is flagrantly excessive or inadequate; or (2) is so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is a result of passion, prejudice or other ulterior motive; or (4) is lacking in evidentiary support. * * [citing authorities].

"The most important of the above enumerated tests is support in the evidence. If the verdict has support in the evidence the others will hardly arise, if it lacks support they all may arise. The real question in most cases, and here, is the amount and sufficiency of evidence to support the award made. Where the verdict is within a reasonable range as indicated by the evidence we will not interfere with what is primarily a jury question. * * * [citing authorities].

"Before reaching the evidence these additional rules should be mentioned. We view the evidence in the light most favorable to the verdict and need only consider the evidence favorable to plaintiff whether it is contradicted or not. * * * [citing authorities]. We must also give weight to the fact the trial court, with benefit of seeing and hearing the witnesses, observing the jury and having before it all incidents of the trial, did not see fit to interfere. * * [citing authorities]."

At trial plaintiff testified her husband, who also worked nights, picked her up from her job at 3:00 a. m. They went to the Country Kitchen Restaurant in Des Moines to have breakfast. While there, they were joined by two friends of Mr. Nelson. After they paid their bill, two of the defendants, Steiner and Moody, arrested Mr. Nelson,

one of his friends and plaintiff. Officer Steiner then attempted to look into plaintiff's purse. He either took it and searched it or plaintiff dumped it out on a counter. The officers confiscated a bottle from the purse containing at least one Tylenol tablet.

Plaintiff was taken to the police station. While at the jail, two criminal informations were filed against plaintiff, one by defendant, Moody, charging her with public intoxication; and later, the other by defendant, Foust, charging plaintiff with illegal possession of a prescription drug, Tylenol. The trial transcript discloses there was available to Foust listings of common drugs and aspirin. Foust failed to verify plaintiff's contention that the pills were aspirin. When analyzed by the state chemist the pill was found to be aspirin.

Of the twelve hours plaintiff spent in the jail, several were spent in a cold barren cell. During her stay she was fingerprinted and photographed. Her fingerprints were sent to the Federal Bureau of Investigation. Her photograph and fingerprints were distributed to certain police departments and to the Bureau of Criminal Investigation, State of Iowa.

A record of her arrest on the charges was formally made. The court clerks and a police officer called as witnesses testified the court file containing the charges and the police arrest record could be seen by any interested member of the public. The charges were apparently dropped but the records remained.

At trial plaintiff's witness, Donald Born, office manager of a General Finance Corporation office in Des Moines, testified he would be leery of extending credit to a person with an arrest record. He stated he would not extend credit to a person arrested for intoxication and illegal possession of prescription drugs.

Barbara Kempton, another of plaintiff's witnesses, was the manager and a counselor for Career Placement, an employment agency. She testified an arrest record such as plaintiff's would affect her opportunity for employment. Such a record would be an even greater burden to one who had to

be bonded as had plaintiff in one of her previous jobs. Mrs. Kempton explained she would have to attempt to find a liberal employer before she could place someone with an arrest record. On cross-examination Mrs. Kempton made clear employers consider many different factors including a person's work record in their hiring process.

There is substantial support in the record for the verdict and it is not excessive.

The case is therefore—Affirmed.