## JOSEPHINE WOCHEK *v.* CARL FOLEY ET AL.
## (11135)

SPEZIALE, C. J., PETERS, HEALEY, SHEA and SPONZO, Js.

Argued February 28—decision released July 3, 1984

*Joseph Rubin,* with whom, on the brief, was *Martha Stone,* for the appellant (plaintiff).

*Paul E. Pollock,* for the appellee (named defendant).

SPEZIALE, C. J. After a jury trial, the plaintiff, Josephine Wochek, was awarded $25,000 damages against the named defendant, Carl Foley, for false imprisonment and malicious prosecution, and the verdict was accepted and ordered recorded by the trial

court. The plaintiff has appealed from a subsequent order of the trial court setting aside the jury verdict and ordering a new trial unless the plaintiff filed a remittitur in the amount of $20,000. The plaintiff claims that the trial court abused its discretion in ordering "either the acceptance by plaintiff of a remittitur in the amount of $20,000.00 or a new trial." We agree with the plaintiff and find error.

The plaintiff brought this action against two Danbury police officers[1] alleging, inter alia, false imprisonment and malicious prosecution. The jury reasonably could have found the following facts: On August 24, 1974, the Danbury police were summoned to the plaintiff's home. The plaintiff's sister told the responding officer, the named defendant, Carl Foley (hereinafter the defendant), that there was a family dispute concerning a dead cat that the plaintiff insisted on keeping inside the house and that their mother was very upset about the situation.

The plaintiff allowed the defendant and another officer, who arrived to assist the defendant, into the house because she was afraid that the defendant was going to break in. After examining the dead cat, the defendant told the plaintiff that she was being taken to the police station. The plaintiff got into the police cruiser after the defendant threatened to use force if she failed to comply. In the police cruiser, she stated that she was being taken against her will. At the police station the defendant gave her a piece of paper that he told her contained her court date but refused to tell her the charges or to allow her to call an attorney. The defendant then informed her that she was being taken to Danbury Hospital and the plaintiff protested, explaining

---

[1] The named defendant was Carl Foley and the other defendant was John Merullo. The jury found the issues for the defendant John Merullo and the plaintiff has not appealed from that judgment.

that she was "terrified of Hospitals." She got back into the police cruiser only after the defendant threatened to drag her.

At the Danbury Hospital, she entered only because of the defendant's threats, and the defendant again refused to allow her to make a phone call. The plaintiff insisted on leaving the hospital and to prevent her from doing so the defendant arrested her on a charge of disorderly conduct. He still would not allow her to call an attorney. After an examination by a doctor at Danbury Hospital, the plaintiff was taken, protesting, to Fairfield Hills, a state mental hospital. She was committed to Fairfield Hills Hospital and kept there for forty-five days.

The defendant testified that he arrested the plaintiff to prevent her from leaving Danbury Hospital before being examined by a doctor. The criminal charge of disorderly conduct was disposed of by the entry of a nolle prosequi on October 18, 1974.

The trial court instructed the jury on the issues of false imprisonment and malicious prosecution. The jury returned a verdict finding "the issues for the Plaintiff as against the Defendant Carl Foley and therefore finds for the Plaintiff to recover of the Defendant Carl Foley $25,000 damages."

Before the verdict was accepted by the trial court, the defendant, pursuant to Practice Book § 311, moved to return the jury for reconsideration on the grounds that the jury had mistaken the evidence in the action or had brought in a verdict contrary to the direction of the trial court as a matter of law. The trial court denied the motion stating "I can't say as a matter of law that they made a mistake in the evidence or misconstrued my directions." The verdict was then accepted and ordered recorded by the trial court.

The defendant subsequently made a motion to set aside the verdict and a motion for remittitur. The trial court set aside the verdict as being excessive and ordered a new trial unless the plaintiff filed a remittitur in the amount of $20,000. In its memorandum of decision on the defendant's motions to set aside the verdict and for remittitur, the trial court stated that the jury could have found that the plaintiff was "persuaded" to accompany the officers to the police station and then to Danbury Hospital. The trial court also noted that although the jury could have found no probable cause for the plaintiff's arrest, "[o]fficer Foley's actions could not be found to be malicious in the true sense of the word." In concluding that the jury award was excessive the trial court stated "the jury must have come to its award by some mistake of fact or were influenced by partiality or prejudice. . . . As only $300.00 in special damages was shown, the verdict of $25,000.00 is clearly punitive and not supported by the evidence. Therefore the court orders a remittitur of $20,000.00."

The plaintiff has appealed from the judgment of remittitur, contending that the trial court abused its discretion. We agree.

"Where, as here, the trial judge disagrees with the verdict of the jury, a vexing question often arises. *Scarcello* v. *Greenwich,* 127 Conn. 464, 468, 17 A.2d 523 [1941]. When this occurs, we review the action of the judge in setting the verdict aside rather than that of the jury in rendering it. *Cables* v. *Bristol Water Co.,* 86 Conn. 223, 224, 84 A. 928 [1912]. Since [the trial judge's] action involves the exercise of a broad legal discretion, it will not be disturbed unless that discretion clearly has been abused. *Brower* v. *Perkins,* 135 Conn. 675, 681, 68 A.2d 146 [1949].

"On the other hand, the plaintiff has a constitutional right to try to the jury the cause of action alleged in his [or her] complaint. Conn. Const. art. I § 21; *Maroncelli* v. *Starkweather,* 104 Conn. 419, 422, 133 A. 209 [1926]; *Robinson* v. *Backes,* 91 Conn. 457, 460, 99 A. 1057 [1917]. This includes the right to have the jury, rather than the court, pass upon the factual issue of damages, when there is room for a reasonable difference of opinion among fair-minded [persons] as to the amount which should be awarded. The question of damages in personal injury cases, especially in these times of changing values, is always a difficult one. *Prosser* v. *Richman,* 133 Conn. 253, 256, 50 A.2d 85 [1946]. Assessment of damages is peculiarly within the province of the jury and their determination should be set aside only when the verdict is plainly excessive and exorbitant. *Szivos* v. *Leonard,* 113 Conn. 522, 525, 155 A. 637 [1931]; *Rutkowski* v. *Connecticut Light & Power Co.,* 100 Conn. 49, 54, 123 A. 25 [1923]. Proper compensation for personal injuries cannot be computed by mathematical formula, and the law furnishes no precise rule for their assessment. *Russakoff* v. *Stamford,* 134 Conn. 450, 455, 58 A.2d 517 [1948]; *Samaha* v. *Mauro,* 104 Conn. 300, 302, 132 A. 455 [1926]; *Knight* v. *Continental Automobile Mfg. Co.,* 82 Conn. 291, 293, 73 A. 751 [1909]. The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. *Briggs* v. *Becker,* 101 Conn. 62, 66, 124 A. 826 [1924]." *Slabinski* v. *Dix,* 138 Conn. 625, 628–29, 88 A.2d 115 (1952); see *Herb* v. *Kerr,* 190 Conn. 136, 459 A.2d 521 (1983); *Seals* v. *Hickey,* 186 Conn. 337, 441 A.2d 604 (1982); *Birgel* v. *Heintz,* 163 Conn. 23, 301 A.2d 249 (1972).

The evidence offered at trial must be reviewed in the light most favorable to sustaining the verdict. *Herb* v. *Kerr,* supra, 140; *Gorczyca* v. *New York, N.H. & H.R. Co.,* 141 Conn. 701, 703–704, 109 A.2d 589 (1954). This the trial court failed to do when it ordered the remittitur. "A mere doubt of the adequacy of the verdict is an insufficient basis for such action. . . . A conclusion that the jury exercised merely poor judgment is likewise insufficient." *Birgel* v. *Heintz,* supra, 28.

The jury returned a verdict for the plaintiff after being instructed on the issues of false imprisonment and malicious prosecution. In setting aside the verdict, the trial court indicated that the plaintiff was not falsely imprisoned until after she reached Danbury Hospital. The jury, however, may have credited the testimony of the plaintiff that she was falsely imprisoned at the very moment that she left her home. In spite of the trial court's statement that the defendant's actions "could not be found to be malicious in the true sense of the word," it denied the defendant's motion to set aside the verdict as "against the law in that the submission of the issue of malicious prosecution to the jury was erroneous." Thus, the trial court in effect accepted the jury's findings that the defendant was liable for both false imprisonment and malicious prosecution. The plaintiff was entitled to damages for both of these torts.

The amount of damages in any given case is dependent on the facts and circumstances of that case. Although other cases are not determinative of the proper amount of damages in this case, they do "offer some guidance in determining the range of those necessarily flexible limits of fair and reasonable compensation by which the amount of the verdict must be tested." *Gorczyca* v. *New York, N.H. & H.R. Co.,* supra, 705. On false imprisonment claims alone, for example, other jurisdictions have not found verdicts in excess of $25,000 to be shockingly excessive, even where

detention was brief. See, e.g., *Zarcone* v. *Perry*, 572 F.2d 52 (2d Cir. 1978); *Nelson* v. *Steiner*, 262 N.W.2d 579 (Iowa 1978); *Moore's, Inc.* v. *Garcia*, 604 S.W.2d 261 (Tex. Civ. App. 1980); *Kroger Co.* v. *Demakes*, 566 S.W.2d 653 (Tex. Civ. App. 1978).

In other situations where the verdict has been so shocking as to compel the conclusion that it was due to partiality, prejudice or mistake, the trial court and this court have tried to preserve the integrity of the constitutional right to a jury determination of damages. A reviewing court will remit excessive damages "as far as it believed it reasonably could without trespassing upon the prerogatives of the jury." *Allen* v. *Giuliano*, 144 Conn. 573, 578, 135 A.2d 904 (1957).

In the present case, the trial court remitted 80 percent of the jury verdict! Because the trial court did not find that the jury erred as a matter of law in its conclusions of the issues, a remittitur of 80 percent trespassed upon the prerogative of the jury and was an abuse of discretion.

Damages for false imprisonment and malicious prosecution are not limited to easily determined special damages such as attorney's fees or loss of time from work. Damages are also designed to compensate for intangible injuries such as mental anguish, humiliation, embarrassment, mortification, shame, fear, and damage to reputation. See *McGann* v. *Allen*, 105 Conn. 177, 134 A. 810 (1926). Indeed, commentators have emphasized that these "are the real consequences to the Plaintiff. . . ." Satter & Kalom, "False Arrest: Compensation and Deterrence," 43 Conn. B.J. 598, 614 (1969). "Many of the factors upon which our rule for the assessment of damages rest are, at best, rather indefinite and speculative in nature." *McKirdy* v. *Cascio*, 142 Conn. 80, 84, 111 A.2d 555 (1955). Monetary awards for the intangible injuries resulting from false imprisonment

or malicious prosecution cannot be readily ascertained. There may be no express accounting that reflects the anguish and turmoil suffered by the person unjustly restrained or prosecuted. All the jury can do is listen and weigh the credibility of the plaintiff recounting his or her emotional trauma. It is especially important in those areas where damages compensate for a state of mind to give deference to the jury, where a number of individuals have unanimously agreed that a specific dollar figure best reflects the injury suffered.

Insofar as the loss of liberty and freedom can ever be compensated simply by money, the $25,000 verdict of the jury, under the circumstances of this case, cannot in good reason amount to a shock of anyone's sense of justice. The trial court erred in concluding that $25,000 is excessive compensation when the evidence, taken most favorably to upholding the verdict, shows that the plaintiff who had never before been arrested was subjected to repeated verbal abuse and physical threats, was unable to retain a part-time job, and even seven years later suffered from nightmares about the incident.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff in the sum of $25,000.

In this opinion the other judges concurred.