PHILIP H. SCHNABEL *v.* CLYDE R. TYLER
(10936)
(10937)

DALY, FOTI and LANDAU, Js.

Argued May 3—decision released August 31, 1993

*M. Donald Cardwell* and *Elliot B. Spector,* for the appellant (plaintiff).

*Kathleen Eldergill,* for the appellee (defendant).

LANDAU, J. The plaintiff, Philip H. Schnabel, appeals from the judgment rendered in favor of the defendant, Clyde R. Tyler, on the complaint and the counterclaim after a trial to a jury. On appeal, the plaintiff claims that, on the complaint, the trial court improperly (1) charged the jury on the defamation claim, (2) denied his motion to set aside the verdict, (3) denied his motion for mistrial, (4) admitted allegedly hearsay evidence, and (5) denied him a fair trial by showing partiality and bias toward the defendant. On the counterclaim,[1] the

---

[1] This case yielded a trial court judgment for the defendant on all counts of the plaintiff's complaint and all counts of the defendant's counterclaim.

plaintiff claims that the trial court improperly (1) refused to set aside the jury's award of damages as excessive and unsupported by the evidence, (2) failed to apply federal law, specifically the qualified immunity defense, to the defendant's claims under 42 U.S.C. § 1983,[2] and (3) excluded relevant testimony.

The jury could have reasonably found the following facts. On February 8, 1988, a Rocky Hill Texaco station owned by Isabelle Teed was the site of an armed robbery. Ten days later, at a meeting of the Rocky Hill town council, Teed criticized the plaintiff, the police chief of the town of Rocky Hill. Thereafter, Teed was questioned by two police officers. She informed them that, on the day of the town council meeting, she had spoken with an unidentified police officer who encouraged her to speak out at the meeting.

The plaintiff initiated an internal investigation to identify the officer who spoke with Teed on the day of the town council meeting. The defendant, a Rocky Hill police officer, became the focus of that inquiry. On March 9, 1988, the plaintiff ordered the defendant into the plaintiff's office and told him that he was the subject of an investigation. The defendant was detained and interrogated by the plaintiff. At the time of this interrogation, the office door was locked and the plain-

The plaintiff filed two separate appeals, one from the judgment with respect to the complaint and one from the judgment with respect to the counterclaim. These appeals were consolidated pursuant to Practice Book § 4004.

[2] Title 42, § 1983 of the United States Code provides a federal civil rights remedy to individuals who have been deprived of their constitutional rights by an official's abuse of process. *Monroe* v. *Pape*, 365 U.S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961). That section provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

tiff denied the defendant's request to have his attorney present during the questioning. As a result of the interrogation, the defendant was held beyond his shift and his requests to leave were ignored. The defendant refused to answer the plaintiff's questions. After approximately one hour, the defendant was released and suspended from the police force.[3]

The following day, the defendant returned to the police station with his attorney. In response to further questioning, he told the plaintiff that he did not reveal confidential information to anyone regarding the Teed armed robbery and denied speaking with Teed on the day of the council meeting.[4]

As a result of the interrogation and detention, the defendant filed a notice of intent to sue the plaintiff and the town of Rocky Hill. In a television broadcast, the defendant stated that the plaintiff's conduct at the March 9, 1988 interrogation may have been an illegal act. The defendant also gave a statement to the Hartford Courant and wrote a letter to the editor that appeared in a local newspaper.

On August 10, 1988, the plaintiff filed a complaint against the defendant for defamation. The defendant filed an answer and a counterclaim alleging false imprisonment, intentional infliction of emotional distress, abuse of process and § 1983 violations of his rights under the first and fourteenth amendments[5] to

---

[3] The record indicates that the defendant was reinstated the following day.

[4] The defendant later admitted that he did speak with Teed on that day but had lied during the investigative meeting because he feared that his employment with the police force would be terminated.

[5] The first amendment to the United States constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

Section 1 of the fourteenth amendment to the United States constitution provides in pertinent part: "No State shall make or enforce any law which

the United States constitution. The jury returned a verdict in favor of the defendant on the complaint and on the counterclaim. This appeal ensued.

I

THE COMPLAINT

A

The plaintiff first claims that the trial court improperly instructed the jury on his defamation claim by omitting the word "not" at a specific point in the charge. We disagree.

" '[T]o preserve full appellate review of a jury charge assigned as error, an appellant must not only move to set aside the verdict . . . but must also set forth, either in the motion itself, in supporting briefs, or in oral argument at a hearing held on the motion, each claim of error with sufficient specificity to enable the trial court to consider the claimed errors.' " (Citations omitted.) *Budlong* v. *Nadeau,* 30 Conn. App. 61, 65, 619 A.2d 4, cert. denied, 225 Conn. 909, 621 A.2d 290 (1993), quoting *Cuartas* v. *Greenwich,* 14 Conn. App. 370, 374, 540 A.2d 1071, cert. denied, 209 Conn. 803, 548 A.2d 436 (1988). The plaintiff filed a motion to set aside the verdict on the counterclaim, but that motion did not address any errors in the jury charge. Neither the transcript nor the parties' supporting briefs present a claim of error in the instructions. Therefore, the trial court did not have notice of the claimed errors and could not consider the plaintiff's claim. See *Jacobs* v. *Thomas,* 26 Conn. App. 305, 310–11, 600 A.2d 1378 (1991), cert. denied, 221 Conn. 914, 603 A.2d 404 (1992). The plaintiff's failure to raise the claimed error specifically in the motion, brief, or argument in support of the motion

shall abridge the privileges or immunities of citizens of the United States . . . nor deny to any person within its jurisdiction the equal protection of the laws."

limits our review to a determination of whether the trial court committed "plain error." Practice Book § 4185; *Knock* v. *Knock,* 224 Conn. 776, 793, 621 A.2d 267 (1993); *Budlong* v. *Nadeau,* supra, 65–66. Plain error review "is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *Budlong* v. *Nadeau,* supra, 66.

The trial court's charge began with a recitation of the elements of a defamation cause of action.[6] The plaintiff objected to that portion of the charge in which the court stated: "For example, if you believe that the gist of Mr. Tyler's words was a flat statement that has eliminated any significant doubt in your minds that the statement was false; or if you determine that the words as spoken are true; or that the plaintiff has established, by clear and convincing evidence, that the words as spoken are false, then you will stop at that point and bring in a defendant's verdict, the verdict for Mr. Tyler." The trial court omitted the word "not" in the phrase, "the plaintiff has 'not' established . . . ." Our independent review of the entire charge indicates that the court's instruction on the law of defamation was not misleading to the jury. The jury instruction indicates no plain error on the part of the trial court nor does it indicate the existence of an error so apparent as to affect the fairness and integrity of the proceedings. Therefore, the plaintiff's first claim fails.

---

[6] The trial court charged in pertinent part: "[T]he plaintiff Chief Schnabel must then prove that the statement or statements found by you to be the statements of words spoken by Mr. Tyler are false. And this element, the fact that was said, was not true, must be proven by Mr. Schnabel by clear and convincing evidence."

## B

In his second claim, the plaintiff asserts that the trial court improperly failed to set aside the verdict on the defamation claim.[7] We disagree.

Again, a party's failure to raise a claim of error at trial limits our review to "plain error." Practice Book § 4185; *Kolich* v. *Shugrue,* 198 Conn. 322, 326, 502 A.2d 918 (1986). " '[I]n the interests of justice [this court will] notice plain error not brought to the attention of the trial court.' " *Dunham* v. *Dunham,* 204 Conn. 303, 311-12, 528 A.2d 1123 (1987). The plaintiff's assertion that the jury could not have found as it did on the basis of the evidence presented at trial does not establish plain error on the part of the trial court.

## C

The plaintiff's third claim is that the trial court improperly denied his motion for a mistrial based on the defendant's incomplete question[8] to the Rocky Hill town manager regarding whether the town would indemnify the plaintiff if damages were awarded to the defendant on the counterclaim. The plaintiff argues

---

[7] While the plaintiff moved to set aside the verdict that motion addresses the counterclaim, not the defamation claim. A party must properly preserve an issue for full review by raising the claimed errors with the trial court and filing a motion to set aside the verdict. *Kolich* v. *Shugrue,* 198 Conn. 322, 325, 502 A.2d 918 (1986). This affords the trial court " 'a full opportunity to redress any errors which may have occurred at trial before the appellate process is begun.' " Id., 326.

[8] The defendant asked the town manager: "Isn't it a fact, Mr. Shew, that the Town of Rocky Hill has agreed to indemnify Mr. Schnabel for damages incurred—"

The plaintiff objected and requested a side bar conference. When this was unsuccessful, the court excused the jury. After argument, the judge denied the plaintiff's motion for mistrial and refused to admit the question. The witness, who was allowed to answer the question outside the presence of the jury, responded "Yes."

that the large jury award signifies that the jury considered the question, even though never completed, as evidence. We disagree.

"The general rule is that a mistrial is granted only where it is apparent to the court that, as a result of some occurrence during trial, a party has been deprived of the opportunity for a fair trial." *Holbrook* v. *Casazza,* 204 Conn. 336, 356, 528 A.2d 774 (1987), cert. denied, 484 U.S. 1006, 108 S. Ct. 699, 98 L. Ed. 2d 651 (1988). At trial, the plaintiff objected on the basis that the question had the effect of influencing the jury to award a disproportionate monetary figure in favor of the defendant. The defendant contended that such evidence was appropriate to show bias and that the witness was not an impartial or neutral observer. The court denied the motion for mistrial, sustained the plaintiff's objection, and instructed the jury to disregard the question.

Our review of the record indicates that this incomplete indemnification inquiry did not deprive the plaintiff of a fair trial. The trial court did not abuse its broad discretion in denying the plaintiff's motion for a mistrial.

## D

The plaintiff next claims that the trial court improperly admitted hearsay evidence that was prejudicial to the plaintiff.

The plaintiff objected to the admission of a portion of a report[9] (hereinafter Weinstein report) written by

[9] The portion of the Weinstein report that was admitted into evidence read as follows: "In accordance with an understanding between the Town and the Police Union, I conducted a pre-termination, fact finding hearing regarding the discharge of Officer Clyde Tyler of the Rocky Hill Police Department. We met on November 9 and 10, 1990 and heard sworn testimony and received documentary evidence. The parties availed themselves of the opportunity to make opening and closing arguments.

"Based on the foregoing, I recommend that Officer Tyler not be terminated but rather that a lesser sanction be imposed. Since the history of

an arbitrator during a review of the circumstances surrounding the plaintiff's attempt to terminate the defendant's employment with the police force. The defendant contends that the evidence does not constitute hearsay. Whether or not the admitted evidence is hearsay, we conclude that its introduction was not prejudicial to the plaintiff because all of the evidence in the Weinstein report came before the jury in other forms.

Evidence that is merely cumulative cannot constitute reversible error. *State* v. *Randolph,* 190 Conn. 576, 590, 462 A.2d 1011 (1983). Evidence that "was simply cumulative and supplementary" to the other evidence admitted during the course of the trial is unlikely to have an effect on the jury. *Bell Food Services, Inc.* v. *Sherbacow,* 217 Conn. 476, 490, 586 A.2d 1157 (1991); see also *San-*

this matter [is] somewhat convoluted, I thought it appropriate to review for you the evidence presented and the history of this proceeding.

\* \* \*

"Specifications 1, 2 and 3 relate to events which took place on March 9, 1988. A negotiated settlement of a prohibited labor practice charge concerning the events of that day precludes their use as the basis of discipline. These specifications should be considered to be null and void. Specifications 4, 5, 6, 7 and 8 concern Officer Tyler's interrogation on March 10, 1988. Specification 6 is the most meritorious and will be discussed after the problems with the others are reviewed.

"Specification 4 refers to Officer Tyler lying about going to Mrs. Teed, disclosing to her confidential information about an on-going investigation and asking her to attend a Council meeting. This specification was not proven at the hearing since . . . .

"Specification 5 says that Officer Tyler lied about having no information about a police officer having disclosed information on an on-going investigation to Mrs. Teed. This specification must fail . . . . Specification 7 alleges that Officer Tyler lied about approaching Mrs. Teed and disclosing confidential information. The latter half of the charge is not proven. Specification 8 repeats the same unproven allegation about disclosure of information about on-going investigation . . . .

\* \* \*

"Specification 9 claims that Officer Tyler disclosed information about an on-going criminal investigation and revealed the identity of a confidential informant. This specification is completely without proven foundation.

*derson* v. *Steve Snyder Enterprises, Inc.,* 196 Conn. 134, 142, 491 A.2d 389 (1985) (admitted evidence was harmful because not entirely cumulative).

The Weinstein report states that a termination hearing took place and recommended that the defendant be suspended, rather than terminated from the police force. The report also reaffirms the defendant's admitted lie about speaking with Teed on the day of the council meeting and verifies the state of his disciplinary record.

The plaintiff admits in his brief that the town manager testified that David Weinstein was employed as an arbitrator to conduct a termination hearing. Weinstein, however, recommended the lesser sanction of a two day suspension as an alternative to termination. The defendant also testified at trial that he lied about speaking with Teed on the day of the council meeting. Furthermore, an exhibit was admitted in the plaintiff's

Specification 10 is a catchall allegation of failing to respond truthfully in a departmental investigation and is too general to put Officer Tyler on notice of the specific charges against him and, in any case, is simply cumulative.

"Specifications 11, 12, 13 and 14 all relate to the alleged untruthfulness by Officer Tyler in statements provided by him to the former Town Manager on April 11, 1988, and September 26, 1988. As I have indicated above, I do not believe that the differences between Officer Tyler's account of events and those of the other witnesses were such that I could conclude with any confidence that he intentionally lied. There are other equally good explanations for those differences as I noted above. The remaining specifications use the claimed misconduct in Specifications 1–10 [in] support of other purported violations of the Police Department Rules of Conduct. They, of course, depend on the validity of Specifications 1–10.

"With respect to Specification 6, (and some portions of several others), I conclude that Officer Tyler did lie about not discussing matters with Mrs. Teed prior to the Council meeting and having no knowledge of any officer speaking with her. He certainly did speak to her and was, quite obviously aware that he had done so. Officer Tyler did not answer candidly when asked in his interrogation on March 10, 1988, if he had spoken to Mrs. Teed on the day of the Council meeting. He recounted a conversation with her in the Town Hall but failed to disclose his conversation with her in the restaurant earlier in the day."

case that listed all the disciplinary specifications brought against the defendant, all of which were addressed in the Weinstein report. Our review of the record and the redacted Weinstein report indicates that the admitted portion of the report consisted merely of cumulative evidence of matters already presented at trial and did not prejudice the plaintiff. Therefore, the plaintiff's claim fails.

E

The plaintiff next claims that the trial court showed bias and partiality toward the defendant. We disagree.

The plaintiff specifically objects to three actions of the trial court: an admonishment of the plaintiff while he was testifying; a preliminary statement not made in the presence of the jury; and a hand gesture allegedly directed toward the defendant's counsel. This court has held that, "[a]s a general rule, even in cases alleging judicial bias, this court will not consider the issue on appeal where the party failed to make the proper motion for disqualification at trial." *Barca* v. *Barca,* 15 Conn. App. 604, 607, 546 A.2d 887, cert. denied, 209 Conn. 824, 552 A.2d 430 (1988). Failure to request recusal or move for a mistrial represents the plaintiff's acquiescence to the judge presiding over the trial. Id.; *Timm* v. *Timm,* 195 Conn. 202, 205, 487 A.2d 191 (1985); see Practice Book § 4185.

As to the first and second objections, the plaintiff failed to request a recusal and did not make a motion for a mistrial. Therefore, he has failed to preserve his right to contest those actions on appeal. The plaintiff's third claim is that the trial court made a hand gesture that showed prejudice in favor of the defendant thereby denying the plaintiff a fair trial. The record indicates that the plaintiff, during a side bar conference, merely questioned the judge's behavior. The plaintiff, however, failed to make a motion for mistrial or request a recusal.

Thus, his acquiescence to the judge's presiding prohibits our review of his claim on appeal. *Timm* v. *Timm,* supra.

## II

### THE COUNTERCLAIM

### A

The plaintiff claims that the trial court improperly denied his motion to set aside the damages award on the counterclaim as excessive and that the jury's award of damages was reflective of the erroneous application of the law to the facts.[10] We disagree.

"Assessment of damages is peculiarly within the province of the jury and their determination should be set aside only when the verdict is plainly excessive and exorbitant. . . . The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, mistake or corruption. . . . Evidence offered at trial relevant to damages must be reviewed in the light most favorable to sustaining the verdict. . . ." (Citations omitted; internal quotation marks omitted.) *Wood* v. *Bridgeport,* 216 Conn. 604, 611, 583 A.2d 124 (1990). "Every reasonable presumption in favor of the correctness of the court's refusal to set aside the verdict as excessive should be indulged . . . and its ruling will not be disturbed unless there

---

[10] The jury awarded Tyler the following: on the false imprisonment claim, $25,000 in compensatory and $10,000 in punitive damages; on the intentional infliction of emotional distress claim, $100,000 in compensatory and $50,000 in punitive damages; on the abuse of process claim, $35,000 in compensatory and $50,000 in punitive damages; on the first amendment claim, $25,000 in compensatory and $20,000 in punitive damages; and, on the equal protection claim, $25,000 in compensatory and $20,000 in punitive damages.

is a clear abuse of discretion." (Citation omitted.) *Oakes* v. *New England Dairies, Inc.,* 219 Conn. 1, 14, 591 A.2d 1261 (1991).

### 1

Our Supreme Court has held that a verdict in excess of $25,000 in false imprisonment claims is not shockingly excessive "even where the detention was brief." *Wochek* v. *Foley,* 193 Conn. 582, 587–88, 477 A.2d 1015 (1984), and cases cited therein. The plaintiff in *Wochek* was forced from her home into a police cruiser and escorted to a hospital against her will. The plaintiff informed the police officers that she was terrified of hospitals but her protests were ignored and her requests for an attorney were denied. Id., 584. The *Wochek* court held that the trial court abused its discretion in setting aside a jury verdict for the plaintiff.

Our review of the record in this case clearly indicates that the jury could reasonably have found from the evidence presented that the defendant was ordered into the plaintiff's office against his will. The office door was locked and the defendant was detained for approximately one hour. He repeatedly asked to leave but his requests were denied and his pleas for legal assistance were also ignored. Thus, there was sufficient evidence to support the jury's verdict and the trial court did not abuse its broad discretion in refusing to set aside the verdict as excessive.

### 2

With regard to the jury award for intentional infliction of emotional distress, we cannot conclude, in light of the evidence, that it "so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) *Berry* v. *Loiseau,* 223 Conn. 786, 810, 614 A.2d 414 (1992). In *Berry,* the

plaintiff, as a result of having gathered data on improper acts of his employer, was subjected to physical abuse and repeated threats. An expert witness diagnosed the plaintiff as suffering from posttraumatic stress disorder. Id. The jury found that the plaintiff suffered emotional distress from his fear of reprisal by his employer. Although the plaintiff did not seek medical treatment for the stress disorder or for his sleep disturbance, the *Berry* court held that the jury's award of $50,000 for intentional infliction of emotional distress was not excessive. Id., 808.

In this case, the jury found that the defendant experienced physical symptoms over an extended period of time that required medical treatment and were a direct result of the plaintiff's conduct. He was almost continuously subjected to internal investigations and disciplinary proceedings. He was forced to perform demeaning tasks where he was required to sit on a tall stool while leaning over a low desk in a police station hallway and remove staples from police department documents. All the while, he was subjected to abusive obscenities and ridicule from the plaintiff. When the defendant was forced to miss work due to his daughter's illness, the plaintiff ordered him to document that illness. The plaintiff also required the defendant, without a nightstick, weapon, handcuffs, or any means to communicate with fellow officers, to guard a prisoner being treated for self-inflicted wounds at Hartford Hospital. The prisoner, who was not placed in physical restraints, was a convicted felon with a reputation for violence. No other officer was placed in these situations.

Our review of the record indicates that there was sufficient evidence for the jury to award these damages. Thus, the trial court did not abuse its broad discretion in denying the plaintiff's motion to set aside the verdict as excessive.

### 3

As to the award for abuse of process, the evidence adequately supports the damages award. The plaintiff admitted in a memorandum to the town manager that the discovery process would most likely furnish the identity of the officer to whom Teed spoke on the day of the town meeting. Evidence was presented that the plaintiff used that information to harass the defendant continually by ordering him to perform degrading clerical work, seeking to discharge him, placing him in a potentially life threatening position of guarding an unrestrained prisoner with a reputation for violence, and instituting numerous disciplinary actions against him, most of which were overturned through proper grievance procedures. The jury reasonably found that the plaintiff wrongfully used the legal process for purposes other than for which they were designed—to remedy any damage to the plaintiff's reputation allegedly caused by the defendant's defamatory remarks. The award for abuse of process properly reflects the evidence presented. The trial court did not abuse its discretion in denying the plaintiff's motion to set aside the verdict as excessive.

### 4

The plaintiff also claims that the defendant failed to allege a first amendment claim and that the evidence was insufficient to support the jury's award. In his fourth claim, the defendant alleged that the plaintiff's harsh treatment of him amounted to punishment for criticizing the plaintiff's conduct publicly and thus, violated his first amendment right to free speech. The plaintiff argues that there could be no causal connection between Tyler's speaking with Teed, the press or the electronic media and the plaintiff's subsequent treatment of the defendant. He claims that his actions

were necessary disciplinary measures in response to the defendant's misconduct. The defendant argues that the plaintiff's harsh treatment of him was retaliation for his speaking out against the plaintiff's policy.

The United States Supreme Court's test for causation requires the party claiming a constitutional violation "to show that his conduct was constitutionally protected, and that this conduct was a . . . 'motivating factor' in the [opponent's] decision" to act in the complained manner. *Mt. Healthy City Board of Education* v. *Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977). Once that burden has been met, the opposing party "had [to show] by a preponderance of the evidence that it would have reached the same decision as to [the defendant's treatment] even in the absence of the protected conduct." Id. The court also stated that in the case of a public employee, the evidence must be "balance[d] between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering* v. *Board of Education,* 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). Under this standard, the defendant was required to present only evidence that his speech was constitutionally protected. The jury by its verdict found that his speech concerned important matters of public concern rather than confidential information and, therefore, was protected. The jury found that the plaintiff failed to prove that his treatment of the defendant would have occurred notwithstanding the defendant's challenged statements. Our independent review of the record indicates that the jury could reasonably infer from the evidence that the plaintiff responded to the defendant's exercise of his free speech rights with conduct meant to punish him and not, as the plaintiff claims, to promote the harmony

of the police department. It also reasonably inferred a retaliatory motive on the part of the plaintiff. No other officers were treated in the same manner as the defendant. Prior to the defendant's remarks his performance record was relatively clean. The plaintiff refused to remove overruled disciplinary charges from the defendant's record and he repeatedly attempted to terminate the defendant's employment over a period of three years following Teed's criticisms at the town meeting. The jury reasonably determined not only that the defendant's exercise of free speech outweighed the interests of the department but that the interests of the department were not promoted by the plaintiff's actions. The jury award for the first amendment violation is clearly supported by the evidence. Thus, the trial court did not abuse its discretion by refusing to set aside the verdict as excessive or contrary to the evidence.

5

The plaintiff further claims that the defendant failed to allege an equal protection claim and that the evidence was insufficient to support the jury's award. The defendant's fifth allegation was that the plaintiff's treatment of him was dissimilar to the treatment of other officers, and therefore, violated his right to the equal protection of law. In *Lehr* v. *Robertson,* 463 U.S. 248, 265–66, 103 S. Ct. 2985, 77 L. Ed. 2d 614 (1983), the United States Supreme Court held that ''[t]he concept of equal justice under the law requires the State to govern impartially. . . . The sovereign may not draw distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective.'' (Citations omitted.) Our review of the record indicates that the jury could have reasonably found that the plaintiff singled the defendant out for harsh treatment. Other officers were not required to fill out sworn statements that they had not spoken

to Teed on the day of the town meeting. No other officers were required to document their children's illnesses. The defendant was excessively disciplined for minor infractions that would normally be overlooked. The plaintiff overruled a disciplinary board's decision to drop reckless driving charges against the defendant based on an unsubstantiated claim of his past driving record. All of this evidence was credited by the jury as an accurate account of the plaintiff's partial treatment of the defendant. We conclude that the trial court did not abuse its discretion in refusing to set aside the verdict as excessive and unsubstantiated by the evidence.

" 'The size of the verdict alone does not determine whether it is excessive. . . .' " *Berry* v. *Loiseau,* supra, 810. Indeed, all of the awards are amply supported by the record and do not shock the sense of justice. The jury awards are not excessive and, therefore, the plaintiff's claims fail.

### B

The plaintiff next claims that the trial court improperly refused to apply federal law, specifically the qualified immunity defense, to the defendant's § 1983 claims. The plaintiff argues that the trial court's failure to apply the qualified immunity defense was harmful error. We disagree.

A trial court may prohibit a government official from raising the qualified immunity defense to his action if the judge determines that the law is clearly established at the time the official acted. "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow* v. *Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). "If the law

was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.,* 818–19.

In *Donahue* v. *Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 56 (2d Cir. 1987), the plaintiff fire fighter publicly admonished the board of fire commissioners for engaging in discriminatory practices and violations of the Freedom of Information Act. The defendants acted in concert to harass him. The fire chief recommended termination, suspended him unnecessarily, generated disputes between him and his coworkers, and disciplined him for profane language that was commonplace at the firehouse. *Id.* The Second Circuit Court of Appeals, in reversing the trial court's summary judgment against the plaintiff, found that a pattern of continual harassment could be understood by a reasonable jury as a deprivation of the plaintiff's right of free speech. *Id.,* 59.

In *Yoggerst* v. *Stewart,* 623 F.2d 35, 39 (7th Cir. 1980), the Seventh Circuit Court of Appeals held that actions taken by government officials "likely to chill the exercise of constitutionally protected speech" included an unwanted transfer of an employee, discharge, reprimand and threat of discharge. In *Rookard* v. *Health & Hospital Corporation,* 710 F.2d 41, 43 (2d Cir. 1983), the plaintiff hospital director of nursing noticed several improprieties within the hospital's nursing department. When the director voiced her concerns she was transferred and then discharged. *Id.,* 44. The Court of Appeals reversed a dismissal of her action and found that the treatment and discharge were intended to warn whistle-blowers of the consequences of speaking out. *Id.,* 47. It stated that "[t]he First Amendment protects a government employee from discharge for speech upon matters of public concern . . . unless, under all the circumstances, the employee's interest

in free comment is outweighed by the State's interest in the efficiency of its public services." (Citations omitted.) Id., 46.

These cases clearly indicate that it is unlawful to discriminate against an employee for exposing government officials they suspect are participating in unlawful practices. Retaliatory actions by officials may be adjudged a punishing tactic, and, therefore, a deprivation of an individual's right to exercise free speech. A reasonable police chief in the plaintiff's position should have known that his treatment of the defendant violated his first amendment rights of free speech.

Thus, the law is clearly established that when government officials respond to an employee's exercise of free speech in a retaliatory manner it violates the employee's free speech rights under the first amendment. The trial court was correct in its conclusion that the qualified immunity defense was not available to the plaintiff.

C

The plaintiff's last claim is that the trial court improperly prohibited testimony he claimed was relevant to the government's interests and entitled him to the qualified immunity defense. We disagree.

" 'A trial court has broad discretion in its rulings on the relevance of evidence and in its determination of whether the probative value of evidence outweighs its prejudicial effect. Reversal is required only when there is an abuse of discretion or when an injustice has been done. *State* v. *Baskins*, 12 Conn. App. 313, 318, 530 A.2d 663, cert. denied, 205 Conn. 811, 532 A.2d 586 (1987).' " *State* v. *Sweeney*, 30 Conn. App. 550, 556, 621 A.2d 304 (1993). "The exercise of such discretion is not to be disturbed unless it has been abused or the error

is clear and involves a misconception of the law." *State v. Douglas,* 203 Conn. 445, 452, 525 A.2d 101 (1987).

Our review of the record indicates that the trial court did not abuse its broad discretion in refusing to allow the plaintiff to testify regarding what he perceived as particular problems in the police department that justified his treatment of the defendant. Therefore, the plaintiff's claim fails.

## D

The defendant, Clyde Tyler, claims attorney's fees for services rendered on this appeal in connection with his 42 U.S.C. § 1983 claims pursuant to 42 U.S.C. § 1988.[11] "Section 1988 (b) of title 42 of the United States Code provides that '[i]n any action or proceeding to enforce a provision of section . . . 1983 of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee.' Federal courts have regularly applied this section to cover a prevailing party on appeal. See, e.g., *Hutto* v. *Finney,* 437 U.S. 678, 693, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978); *Hastings* v. *Maine-Endwell Central School District,* 676 F.2d 893, 896–97 (2d Cir. 1982).

---

[11] The defendant asserted the claim for attorney's fees in the conclusion of his brief. The plaintiff failed to respond to this request in a reply brief. Faced with identical circumstances in *Torres* v. *Waterbury,* 30 Conn. App. 620, 626 n.2, 621 A.2d 764 (1993), this court noted: "Neither 42 U.S.C. § 1988 (b), our Connecticut decisional law or our rules of appellate practice specify the proper method of raising a claim for attorney's fees on appeal. While the claim could have been made, subject to the outcome of the appeal, directly to the trial court in a postjudgment motion, we believe that the matter is properly before us. . . . As an additional matter, we note that a party's failure to analyze a particular issue may preclude appellate scrutiny." (Citation omitted.) Here, as in *Torres,* the defendant has offered some analysis and case law, although limited, in support of his request for an attorney's fee award, and, therefore, we will address it. Id.

The United States Supreme Court has held that a plaintiff is a prevailing party pursuant to § 1988 if the plaintiff 'succeed[s] on any significant issue in the litigation which achieves some benefit the part[y] sought in bringing suit.' *Hensley* v. *Eckerhart,* 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)." *Torres* v. *Waterbury,* 30 Conn. App. 620, 626, 621 A.2d 764 (1993).[12] Although we have labeled Tyler the defendant in this suit, on his § 1983 claim his status is that of a prevailing party.

We recognize that a prevailing party on an appeal can recover reasonable attorney's fees, but the decision to award such fees is discretionary and a "matter more appropriately determined by the trial court." Id. Because Tyler has prevailed on his § 1983 claim in this appeal, we remand the matter for a determination by the trial court of his request for reasonable attorney's fees connected with this appeal.

The judgment is affirmed and the defendant's request for reasonable attorney's fees is remanded to the trial court for a determination of whether an award is appropriate and, if so, the amount of the award.

In this opinion the other judges concurred.

---

[12] As the *Torres* court noted, the situation in which a defendant is requesting attorney's fees requires an entirely different analysis. *Torres* v. *Waterbury,* 30 Conn. App. 620, 626 n.3, 621 A.2d 764 (1993).