## O. PAUL SHEW *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
### (15279)

Foti, Landau and Spear, Js.

---

Argued December 11, 1996—officially released April 1, 1997

*Victor R. Perpetua*, with whom, on the brief, were *Regina M. Hopkins*, commission counsel, and *Mitchell W. Pearlman*, general counsel, for the appellant (named defendant).

*Felix J. Springer*, with whom, on the brief, was *Sarah C. Baskin*, for the appellee (plaintiff).

LANDAU, J. This is an appeal from the judgment of the trial court in favor of the plaintiff, O. Paul Shew, reversing the decision of the defendant freedom of information commission (commission) ordering the plaintiff to provide access to certain documents.[1] On

---

[1] In addition to sustaining the plaintiff's appeal, the trial court remanded the case to the commission to make additional findings. Notwithstanding the fact that the remand requires the commission to take additional evidence, the trial court's judgment is a final judgment under General Statutes § 4-183 (j) of the Uniform Administrative Procedure Act, which provides that "[f]or the purposes of this section, a remand is a final judgment."

appeal, the commission[2] claims that the trial court improperly (1) substituted its judgment for that of the administrative agency, (2) concluded that the attorney-client privilege barred disclosure of certain documents and (3) concluded that the requested documents were not required to be disclosed pursuant to General Statutes § 1-19 (c) (1).[3] We affirm the judgment of the trial court.

The following facts are not in dispute. The plaintiff was the town manager of the town of Rocky Hill.[4] From December, 1991, to June, 1992, he conducted an investigation of the town's police chief, Philip Schnabel, to determine whether the chief's employment with the town should be terminated. To assist in the investigation, he hired attorneys Felix Springer and Elaine Stuhlman. Springer concentrated on reviewing the trial transcript and evidence in a civil tort case; see *Schnabel* v. *Tyler*, 32 Conn. App. 704, 630 A.2d 1361 (1993), aff'd, 230 Conn. 735, 646 A.2d 152 (1994);[5] because the jury verdict in that case raised serious concerns about whether Schnabel had abused the authority of his office. Stuhlman concentrated on interviewing town employ-

[2] Edward A. Peruta, a defendant in this action, did not appeal from the trial court's judgment.

[3] General Statutes § 1-19 (c) provides in pertinent part: "[D]isclosure shall be required of (1) interagency or intra-agency memoranda or letters, advisory opinions, recommendations or any report comprising part of the process by which governmental decisions and policies are formulated, except disclosure shall not be required of a preliminary draft of a memorandum, prepared by a member of the staff of a public agency, which is subject to revision prior to submission to or discussion among the members of such agency . . . ."

[4] For purposes of this appeal, we will refer to the plaintiff as the town manager.

[5] In 1988, Philip Schnabel, former police chief of Rocky Hill, filed a defamation action against one of his officers, Clyde Tyler. Tyler counterclaimed against Schnabel in his official capacity, alleging false imprisonment, intentional infliction of emotional distress, violation of his constitutional rights to free speech and equal protection and abuse of process. The jury returned a verdict for Tyler on his counterclaims and awarded damages of $370,000, including punitive damages on each count.

ees and other persons to determine whether there may have been evidence outside the trial record that Schnabel had abused his authority. Stuhlman also gave the town manager legal advice related to her findings. The town manager hired Springer and Stuhlman in an effort to avoid legal complications and because he thought that General Statutes § 7-278, which provides statutory protection to police chiefs, necessitated legal counsel.

From January to April, 1992, Stuhlman conducted interviews, prepared draft summaries of the interviews and prepared affidavits and a preliminary draft report based on the interviews. In April, 1992, Stuhlman forwarded summaries of the interviews together with affidavits to Springer. In June, 1992, Springer forwarded a report documenting Schnabel's actions to the town manager.

In December, 1993, the defendant Edward A. Peruta requested from the town manager access to all statements "created and/or collected as part of an investigation that resulted in the termination of former Rocky Hill police Chief Schnabel." Specifically, Peruta sought access to Stuhlman's documents. The town manager denied Peruta's request, claiming that the requested documents were protected from disclosure by the attorney-client privilege. Peruta filed a complaint with the commission challenging the town manager's denial of access to those documents.

Following a hearing and in camera review of the challenged documents, the commission found that the documents were public records. It found that Stuhlman's documents were not exempt from disclosure under General Statutes § 1-19 (b) (1) as "preliminary drafts or notes" and that the documents were not protected by the attorney-client privilege pursuant to § 1-19 (b) (10). The commission ordered the town manager to make the documents available to Peruta in accord-

ance with § 1-19 (a). The commission's decision regarding the "preliminary drafts or notes" exception was based on its interpretation of the statutory language to mean only documents that are used in the creation of some subsequent finished document. It found that the Stuhlman documents were essentially products themselves, not "preliminary" to anything developed from them and, therefore, were not exempt. The commission also rejected the claimed attorney-client privilege, finding that Stuhlman was neither hired nor acting as an attorney for the plaintiff, but was acting as "an investigator with legal credentials."

The town manager appealed to the trial court pursuant to General Statutes § 4-183, claiming that the Stuhlman documents were protected against disclosure by the attorney-client privilege and exempt under § 1-19 (b) (10) and were "preliminary drafts or notes" and exempt under § 1-19 (b) (1).

The trial court held that the commission improperly found that the attorney-client privilege did not exist. It also disagreed with the commission's conclusion that the privilege should not prevent disclosure of the Stuhlman documents because they are not the kind of communication that the privilege protects. While the trial court found impropriety in the commission's finding that the privilege did not apply to the communications in question, it also found that the commission failed to make further findings concerning the criteria set out in *Upjohn Co.* v. *United States*, 449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). Therefore, the trial court remanded the case to the commission for that purpose.

The trial court also found that the commission's conclusion that the documents in question were not preliminary drafts or notes within the meaning of § 1-19 (b) (1) was improper. The trial court remanded the case to the commission to make findings, as required by § 1-

19 (b) (1), as to whether the town manager properly determined that the public interest in withholding the documents outweighed the public interest in their disclosure.

## I

The commission first claims that the trial court failed to exercise appropriate judicial restraint in applying the suitable standard of judicial review set forth in General Statutes § 4-183 (j)[6] when it sustained the administrative appeal regarding the factual issue of whether Stuhlman was acting as an attorney or investigator. The commission argues that, because its action was supported by substantial and competent evidence on the whole record, the trial court should have upheld its decision. The town manager asserts, however, that the trial court's review was proper because the commission's decision was clearly erroneous in view of the lack of substantial and probative evidence in the record.

"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, §§ 4-166 through 4-189), and the scope of that review is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the defendant. . . . *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 773, 535 A.2d 1297 (1988). Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the

___

[6] General Statutes § 4-183 (j) provides in relevant part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . . If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may . . . remand the case for further proceedings. . . ."

evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . [Id., 774.] Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); see also *New Haven* v. *Freedom of Information Commission*, supra, 773–74; *Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 342–43, 435 A.2d 353 (1980). . . . *Perkins* v. *Freedom of Information Commission*, [228 Conn. 158, 164–65, 635 A.2d 783 (1993)]. . . . *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, 233 Conn. 28, 39, 657 A.2d 630 (1995)." (Internal quotation marks omitted.) *Hartford* v. *Freedom of Information Commission*, 41 Conn. App. 67, 72–73, 674 A.2d 462 (1996).

After reviewing the record, we agree with the trial court that, contrary to the commission's contention that the trial court failed to give any weight to the evidence that the town manager had not sought legal advice from Stuhlman, all of the relevant evidence in the record supports the trial court's conclusion that the town manager hired Stuhlman for legal advice. The record reveals that the town manager stated that he needed legal advice in the investigation of the police chief, that he knew Stuhlman was a competent attorney, and that he would not have hired her if she had not been an attorney. The town manager further stated that he felt that an attorney was required to conduct the interviews

concerning the police chief because of the statutory protections afforded the chief by § 7-278 and to avoid legal complications with regard to potential disciplinary matters relating to the chief. In contrast, there is no evidence in the record that Stuhlman was not acting in a legal capacity. On the basis of the record before us, we conclude that the trial court properly concluded that the town manager hired Stuhlman as an attorney and not as "an investigator with legal credentials."

## II

The commission next claims that the trial court improperly found that the Stuhlman documents were protected against disclosure by an attorney-client privilege. The commission argues that, even if we conclude that the town manager hired Stuhlman to obtain legal advice, the communications fall outside the scope of the privilege. Because we have already concluded in part I that Stuhlman was hired to render legal advice, we must next consider what impact the attorney-client privilege has on communications between an attorney and a municipality or corporation that employs her.

The common-law rule of attorney-client privilege is, "[w]here legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection may be waived." (Internal quotation marks omitted.) *LaFaive* v. *DiLoreto*, 2 Conn. App. 58, 65, 476 A.2d 626, cert. denied, 194 Conn. 801, 477 A.2d 1021 (1984). The privilege exists "to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co.* v. *United States*, supra, 449 U.S. 390. We note, however, that "since the privilege has

the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose. Accordingly it protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege. . . . *Fisher* v. *United States*, 425 U.S. 391, 403, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976)." *Ullmann* v. *State*, 230 Conn. 698, 713, 647 A.2d 324 (1994).

In *Upjohn Co.* v. *United States*, supra, 449 U.S. 383, the United States Supreme Court addressed the problem of the attorney-client privilege in the corporate context. *Upjohn* involved an investigation, organized by Upjohn's general counsel, into possibly illegal payments made by the corporation to foreign governments. As part of the investigation, the attorneys prepared a questionnaire that was sent to all foreign general and area managers, inquiring about payments from Upjohn to any employee or official of a foreign government. Subsequently, the Internal Revenue Service issued a summons demanding production of files pertaining to the investigation, including the questionnaires prepared for counsel and answered by the various corporate managers. The Supreme Court noted that a letter attached to the questionnaire stated that the investigation was under the direction of counsel, responses were highly confidential, and the completed questionnaires should be returned to counsel.

In determining if the privilege attached, the Supreme Court considered whether (1) the communication was part of a corporate purpose to obtain legal advice, (2) the communication concerned matters within the employees' corporate duties, (3) each employee knew that he was making a confidential statement as part of a corporate purpose to secure legal advice, and (4) the statements were kept confidential, or disclosed in a manner consistent with the privilege. Id., 394–95. The court held that the attorney-client privilege protected

the questionnaires and any notes on responses to interview questions from disclosure.

It is axiomatic that the privilege belongs to the client. See *In re Sean H.*, 24 Conn. App. 135, 143, 586 A.2d 1171, cert. denied, 218 Conn. 904, 588 A.2d 1078 (1991). In the case of an individual client, the provider of the information and the person who acts on the attorney's advice are one and the same. In the corporate-municipal government context, however, it will frequently be not only officers and agents—those who fall easily under the attorney-client privilege umbrella—but employees who possess the information needed by the lawyer. By limiting the privilege to officers and agents of the corporation or municipality, we frustrate the purpose of the privilege by discouraging the communication of relevant information by employees to attorneys seeking to render legal advice to the client corporation or municipality. See *Upjohn Co.* v. *United States*, supra, 449 U.S. 392.

Here, information, not available to upper level management—the town manager—was needed to supply a basis for legal advice concerning compliance with legalities involved in the possible termination of the police chief. Consistent with the fundamental purposes of the attorney-client privilege, these communications must be protected against compelled disclosure. This result is supported by the commission's recognition of the privilege in § 1-19 (b) (10), which exempts from disclosure communications privileged by the attorney-client relationship. We hold that the communications by town employees to counsel are covered by the attorney-client privilege. Consistent with the teachings of *Upjohn Co.* v. *United States*, supra, 449 U.S. 383, communications to an attorney for a public agency are protected from disclosure by privilege if the following conditions are met: (1) the attorney must be acting in a professional

capacity for the agency, (2) the communications must be made to the attorney by current employees or officials of the agency, (3) the communications must relate to the legal advice sought by the agency from the attorney, and (4) the communications must be made in confidence.

## III

Finally, the commission argues that the trial court improperly found that the requested documents were not required to be disclosed pursuant to General Statutes § 1-19 (c) (1). Specifically, the commission argues that even if the documents were "preliminary drafts of a memorandum," they were not "prepared by a member of the staff of a public agency" as required by § 1-19 (c) (1). We disagree.

General Statutes (Rev. to 1993) § 1-19 (c) provides in part that "[n]otwithstanding the provisions of subdivision (1) of subsection (b) of this section, disclosure shall be required of (1) interagency or intra-agency memoranda or letters, advisory opinions, recommendations or any report comprising part of the process by which governmental decisions and policies are formulated, except disclosure shall not be required of a preliminary draft of a memorandum, prepared by a member of the staff of a public agency, which is subject to revision prior to submission to or discussion among the members of such agency . . . ."

Because the commission concluded that the Stuhlman documents were not preliminary drafts or notes and, therefore, not exempt from disclosure under § 1-19 (b) (1), it did not reach the issue of the application of § 1-19 (c) (1). The trial court, after reviewing the documents in camera, found that the five documents were all either unfinished or preliminary; see *Van Norstrand* v. *Freedom of Information Commission*, 211 Conn. 339, 344, 559 A.2d 200 (1989); under § 1-19 (b)

(1) and (c) (1). Although the trial court did not make an express finding that Stuhlman was a "member of the staff of a public agency," she was hired by the town to provide legal advice. Stuhlman's role as legal advisor for the Schnabel investigation was analogous to being a staff member as required by § 1-19 (c) (1). Thus, the trial court properly concluded that the documents were exempt from disclosure.

The judgment is affirmed.

In this opinion the other judges concurred.