[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff sues the workers' compensation insurance CT Page 2631 carrier of her former employer alleging that the defendant unlawfully cut off her workers' compensation benefits and in so doing acted in bad faith, breached its covenant of fair dealing and violated her rights under the Connecticut Uniform Trade Practices Act (CUTPA). The other causes of action alleged are not material to the present controversy between the parties.
The defendant has filed a motion to quash a deposition subpoena which it claims seeks materials which are protected by the attorney client privilege and/or are exempt from discovery because they were prepared in anticipation of this litigation and therefore should be classified as work product. P. B. § 219.
The parties have briefed the issues and in response to this court's order of January 16, 1998 the plaintiff has filed a written offer of proof in support of her cause of action. The defendant has submitted a revised privilege log in which each of the challenged documents is claimed to fall under both the privilege and the exemption. Of the eleven documents at issue, documents ten and eleven have already been produced. Document nine apparently was produced with the redaction of material which makes "reference to an attorney client privileged conversation". Document three is described as relating to "communications between the defendant and its present attorney in this action". The remaining seven documents are claimed to contain the defendant's attorney's mental impressions, legal opinions, conclusions and theories. The revised log did not, however, adequately address whether the particular document was made in accordance with a routine procedure or whether the defendant had a relationship with the attorney which either predated the first controversy between the parties or whether it subsists even to today (paragraphs 5 and 6 of the order).
In the context of improper insurance practices our Supreme Court has approved the following definition of bad faith. "Bad faith is defined as the opposite of good faith, generally implying a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties. Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. . . . It contemplates a state of mind affirmatively operating with furtive design or ill will". Buckmanv. Peoples Express. Inc., 205 Conn. 166, 171 (1987). CT Page 2632
In more practical terms, bad faith within the framework of insurer misconduct has been held to include situations in which the insurer makes decisions upon inadequate information resulting from negligent failure to conduct an adequate investigation, or makes a totally unrealistic assessment of the likelihood of a successful defense in the action. Shapiro v. Allstate Insurance,Co., 44 F.R.D. 429, 430 (E.D.PA. 1968).
 A.
Attorney Client Privilege
"No subpoena may compel the production of matters which are privileged or otherwise protected by law from discovery. General Statutes § 52-184e(b). Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection may be waived." Shew v. Freedom of InformationCommission, 44 Conn. App. 611, 618 (1997). "Similar to the work product doctrine, the burden of proving facts essential to the attorney client privilege is on the person asserting it." Celentano v.Home Insurance Co., 7 CONN. L. RPTR. 567, 7 CSCR 1365, 1366 (1992). "It's within the court's discretion to find that the documents sought are privileged communications." Id. "The question of whether a communication is privileged is a question of law for the court to decide". Rehim v. Kimberly-Clark, Corp., Superior Court J.D. Danbury No. 323416, 18 CONN. L. RPTR. 517 (December 5, 1996, Leheny, J.).
Apart from waiver, in the field of criminal law our Supreme Court has carved out an exception to the privilege where, after conducting a fact specific balancing test, the trial court were to find that the benefit to be gained for the correct disposal of the litigation outweighed the injury that would inure to the attorney client relationship. State v. Cascone, 195 Conn. 183, 189
(1985). Because the information flowing from the attorney client relationship "struck at the heart" of the state's case the court held that the limited potential for disrupting the relationship was outweighed by the harm of nondisclosure. In State v.Williams, 30 Conn. App. 654, 658 (1993), the Appellate Court heightened the privilege against nondisclosure if the attorney client relationship is ongoing at the time the privileged is invoked. CT Page 2633
This court believes that there is no sound reason why the fact specific balancing test should not be employed in a civil case whether the bad faith of the insurer in discontinuing workers' compensation benefits is at issue.
At one end of the balance scale is the continuum of phases of the relationship, i.e. whether the attorney was engaged for the particular matter only, whether there has been an ongoing relationship both before and after the matter at hand, whether the relationship continues to the present, whether the parties contemplate a future relationship. Lastly, there is a need to protect the institution of the privilege so that public confidence in full and candid disclosure between client and attorney is not inhibited.
On the other end of the scale is the effect which nondisclosure would have on the plaintiff's case. In State v.Cascone, supra, the court recognized a need where disclosure goes directly to the heart of the matter or is the central issue in the case, i.e. the defendant's guilt. In an insurance bad faith case the critical issue is the manner in which the company has handled the claim, including its consideration of the advice of counsel, insofar as it impacts upon its mandated duty of acting in good faith. Fidelity Casualty Insurance, Co. of N.Y. v.Taylor, 525 So.2d 908 (Fla. 1987). Thus, if the material sought relates to a central issue in the case the only way that that the facts relevant to the issue can be proved is by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action that it did. Brownv. Superior Court, 670 P.2d 725, 724 Ariz. (1983). The correct disposal of such litigation, indeed the ends of justice, demand such disclosure.
Notwithstanding the above, the balancing test cannot be performed thoroughly without an in camera examination of these documents. The court will also consider such facts in affidavit form as the parties wish to offer which support each end of the balancing test. The court will also consider holding an evidentiary hearing upon request consistent with the need to prevent premature disclosure.
 B.
Work Product CT Page 2634
The defendant argues that all of the information sought is protected by the work product exemption. It contends that it retained its attorney to represent it before the workers' compensation commissioner and so any documents prepared by or at the direction of its attorney are protected under the work product doctrine. The defendant further argues that the plaintiff cannot demonstrate a substantial need for the information as the plaintiff has not shown that she is unable to obtain the equivalent by other means. The plaintiff argues that the defendant's workers' compensation file and the communications contained therein are not material prepared in anticipation of litigation but rather are likely to be business records prepared in the ordinary course of business to which the exemption is inapplicable. Finally, the plaintiff contends that the information sought is unavailable from any other source and that the plaintiff is in substantial need of the information in order to provide direct proof of the bad faith claims.
Work product protection from disclosure is governed by P. B. § 219 which provides in pertinent part as follows:
 Subject to the provisions of Sec. 220, a party may obtain discovery of documents and tangible things otherwise discoverable under Sec. 218 and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall not order disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
In Connecticut, the work product exemption is available only where an attorney's work is involved. "Work product can be defined as the result of an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation . . . the attorney's work must have formed an essential step in the procurement of the data which the opponent seeks and the attorney must have performed duties normally attended to by attorneys". Stanley Works v. New BritainRedevelopment Agency, 155 Conn. 86, 95 (1967). CT Page 2635
Courts have looked at several factors in evaluating the primary purpose for the preparation of the materials in question. First, a document prepared in the ordinary course of business is not prepared in anticipation of litigation. North AmericanPhilips Corp. v. Aetna Casualty and Insurety Co., Superior Court No. 395790 9 CONN. L. RPTR. 230, J.D. Hartford-New Britain at Hartford (O'Neill, J. 1993). The courts have also looked at the temporal proximity of the litigation and the likelihood of litigation. Id.
It seems obvious that a bad faith action against an insurer can only proved by showing the underlying claims process, including exactly how the company processed the claim, how thoroughly it was considered and why the company took the action that it did. Brown v. Superior Court, supra at 734.
The plaintiff offers to prove that "the defendant made no reasonable attempts within a reasonable period of time to conduct an investigation to ascertain the plaintiff's actual physical condition" and that the defendant "ignored and unreasonably disregarded . . . the medical facts, reports and statements of physicians regarding her condition" and otherwise engaged in a pattern of unfair dealing.
The plaintiff further asserts that there is no source from which she can obtain the substantial equivalent of the material needed to prove these allegations. In this case the defendant's claim file is not at issue except for certain designated documents. What is at issue are the mental impressions, legal opinions, conclusions and legal theories of the defendant's attorney.
The defendant argues that P. B. § 219 makes these documents absolutely privileged and therefore nondisclosable under any circumstances. The vast majority of jurisdictions which have a similar ostensibly absolute rule (including federal rule 26(b)(3)) make an exception where the material sought is essential to the party's claim. Brown v. Superior Court, supra
at 736; Robarge v. Patriot General Insurance Company,42 Conn. Sup. 164 (1992). Here, the very advice of counsel is central to the issue of the defendant's good or had faith conduct. Fidelity Casualty Insurance Co of N.Y. v. Taylor, supra at 908. It obvious that such communications of counsel could never be obtained by the plaintiff through any other legitimate means.
As with part A above, because these "work product documents" CT Page 2636 are claimed to contain legal advice, they also will be examinedin camera. The inquiry upon such examination will be whether the necessity for the plaintiff to discover these materials outweighs the otherwise absolute right to immunity from disclosure. To put it another way, the court must strike a balance between the need to prevent the plaintiff from building her case on the work done by her opponent's counsel while at the same time fostering sufficient disclosure to enable the plaintiff to develop factually the central issue of her case. Klaiber v. Orzel,714 P.2d 830 (Ariz. 1985).
On February 17, 1998 this Court defaulted the defendant for failure to comply with its order of January 16, 1998. At that time the court was unaware that the defendant had filed its "response" to that order on February 3, 1998. Accordingly, the default is hereby vacated. All unresolved motions other than those which implicate the issues involved in this ruling may be reclaimed to the short calendar for decision.
All materials for in camera review shall be filed under seal within two weeks.
MOTTOLESE, J.