[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT VINCENT J. FLYNN'S MOTION FOR PROTECTIVE ORDER (#216)
The plaintiff, Wendell C. Harp ("Harp"), has brought this lawsuit against four employees of the Connecticut Housing finance Authority ("CHFA") alleging (1) defamation, (2) false light violation of his right to privacy, (3) tortious interference with business relationships, (4) intentional infliction of emotional distress, and (5) racial discrimination. The employees have been sued in their individual capacities.
The matter has come before the court on the motion of defendant Vincent J. Flynn ("Flynn") for a protective order barring questions at his scheduled deposition relating to matters claimed to be covered by the attorney-client privilege. In particular, Flynn seeks an order prohibiting deposition questions related to:
 (1) Verbal or written communications received by Vincent Flynn CT Page 2290 from any member of the CHFA staff or management regarding Renaissance Management Company and/or Wendell Harp which were received for the purpose of enabling Vincent Flynn to provide advice to CHFA management on possible litigation with Renaissance Management Company and/or Wendell Harp.
 (2) Verbal or written communications made by Vincent Flynn to any member of the CHFA staff or management regarding Renaissance Management Company and/or Wendell Harp which were provided for the purpose of enabling Vincent Flynn to provide advice to CHFA management on possible litigation with Renaissance Management Company and/or Wendell Harp.
Harp has objected to the requested protective order and filed a memorandum in opposition. For the reasons set forth below the motion for protective order is granted.
Background
In support of his motion for protective order, Flynn has filed an affidavit attesting, inter alia, to the following: That he is an attorney-at-law employed with CHFA as Assistant Counsel-Litigation working under the direction of William A. Dickerson, General Counsel for CHFA. That in early June of 1996 he was directed by William A. Dickerson to summarize the rights and obligations of CHFA regarding written agreements affecting properties owned or managed by Renaissance Management Company and to make legal recommendations for a course of action for CHFA to take regarding those agreements. That on June 4, 1996 he prepared a "litigation strategy memorandum" directed to Mr. Dickerson discussing CHFA's rights, obligations and options and recommending various legal courses of action. The affidavit goes on to state that the recommendations in the memorandum were independently made and based on Flynn's legal training and experience. In addition, Flynn states that his conclusions and recommendations were not motivated by malice against Harp nor by any intent to injure or discriminate against him. Based on this affidavit, Flynn claims that all communications between him and persons on the CHFA staff or management regarding the litigation strategy memorandum are privileged and beyond the reach of discovery.
Harp asserts that Flynn's communications are not privileged for four reasons: (1) the attorney-client privilege is inapplicable because no litigation was pending at the time the communications CT Page 2291 were made; (2) communications from attorney to client, as opposed to communications from client to attorney, are not normally within the privilege; (3) the communications are not confidential because CHFA allowed Harp to see the litigation strategy memorandum; and (4) the litigation strategy memorandum does not contain legal advice but rather an illegal scheme to take Harp's property and liberty.
Discussion
Initially it is Flynn's burden to establish application of the attorney-client privilege to the communications in question.Tunick v. Day, Berry Howard, 40 Conn. Sup. 216, 219 (1984). Where an attorney for a public agency is involved, the privilege applies if the following conditions are met: (1) the attorney must be acting in a professional capacity for the agency; (2) the communications must be made to the attorney by current employees or officials of the agency; (3) the communications must relate to the legal advice sought by the agency from the attorney; and (4) the communications must be made in confidence, Shaw v. Freedom ofInformation Commission, 44 Conn. App. 611, 620-21 (1997). The court finds, based on Flynn's affidavit, that these four conditions have been met.
Harp's objections to the applicability of the privilege are not persuasive. First, Harp's claim that the attorney client privilege is in applicable because no litigation was pending, is incorrect. "It is not true, and has not been true since the nineteenth century, that the confidences of a client are respected only when given for the purpose of securing aid in litigation" United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996); 8 Wigmore, Evidence, § 2291 at 559.
Second, Harp's assertion that communications from attorney to client (as opposed to from client to attorney) are not normally within the privilege is also not correct. While it is true that communications that are not legal advice are outside the privilege, Ullmann v. State, 230 Conn. 698, 714 (1994), legal advice from attorney to client is clearly privileged. See Shaw v.Freedom of Information Commission, supra 44 Conn. App. 618,United States v. Chen, supra 99 F.3d 1501.
Third, Harp's claim that the privilege has been lost because the communications are no longer confidential is inconsistent with the law of this case. In an earlier ruling on a discovery CT Page 2292 motion to compel disclosure of the litigation strategy memorandum, the court (Moran J.) ruled that the memorandum was confidential notwithstanding its "accidental, unintentional, and inadvertent disclosure" and denied the motion to compel its production. Accordingly, the inadvertent disclosure of the memorandum to Harp and his business associate Milton Jackson does not defeat the confidentially of the memorandum nor undermine its privileged character.
The court finds that Flynn has met his burden of establishing the applicability of the attorney-client privilege to the communications pertaining to his preparation of the litigation strategy memorandum so as to invoke the general rule that privileged material is not subject to disclosure. See Practice Book § 13-2.
This, however, is not the end of the inquiry. Harp's fourth claim is that even if the communications are deemed privileged, they should nevertheless be disclosed pursuant to the so-called "crime-fraud" exception. See United States v. Zolin,491 U.S. 554, 563 (1989). The purpose of this exception is to assure that the "seal of secrecy" between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime. Id.
The best statement of this exception was made by Justice Cardozo writing for a unanimous Supreme Court in Clark v. UnitedStates, 289 U.S. 1, 15 (1933) as follows:
 "There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults and attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told. There are early cases apparently to the effect that a mere charge of illegality, not supported by any evidence, will set the confidences free. (Citations omitted) But this conception of the privilege is without support in later rulings. It is obvious that it would be absurd to say that the privilege could be got rid of merely by making a charge of fraud. (Citation omitted) To drive the privilege away, there must be something to give color to the charge; there must be prima facie evidence that it has some foundation in fact."
289 U.S. 15
CT Page 2293
Based on the above quoted language, the applicability of the crime-fraud exception turns on whether Harp has provided "prima facie evidence" that the communications were for the purpose of committing a crime or fraud.
In his Revised Memorandum in Opposition to Defendant Flynn's Motion for Protective Order, dated January 13, 2000 ("Revised Memorandum of 1/13/00"). Harp supports his claim to the applicability of the fraud exception as follows:
 "The plaintiff has alleged that defendant Flynn's communications suggested that plaintiff's business record could be misrepresented by CHFA, thereby subjecting him to a different standard than other CHFA borrowers. If an attorney knowingly advocates or participates in a plan to misrepresent a party's business record in order to deprive him of a consideration given to other similarly situated parties, such as the suggestion by CHFA attorneys that the plaintiff be placed in "technical default, that attorney is suggesting that a fiction be used to cause financial injury to the affected party." (emphasis added) Revised Memorandum of 1/13/00 at 5-6.
It is clear from the above that the fraud exception claim is based on Harp's allegations. Mere allegations or suspicions are insufficient. United States v. Chen, supra 99 F.3d 1503. At oral argument, Harp's counsel directed the court to Harp's affidavit dated December 22, 1999 as further evidence in support of the exception. On this issue, the affidavit is likewise insufficient to establish Flynn's communications were for the purpose of committing fraud. At most, the affidavit describes the litigation strategy memorandum as discussing a nonfinancial basis for establishing a mortgage default that Harp asserted was not justified. The essential element of intentional misrepresentation, while alleged, is not supported factually. On the present record, Harp has failed to establish a basis for the application of the crime-fraud exception.
For the reasons set forth above, the motion for protective order is granted.
So ordered at New Haven, Connecticut this 16th day of February, 2000.
Devlin, J. CT Page 2294