MARK MOSHER *v.* MICHAEL KOZLOWSKI,
COMMISSIONER OF MOTOR VEHICLES, ET AL.
(AC 19475)

O'Connell, C. J., and Foti and Zarella, Js.[1]

Submitted on briefs March 2—officially released October 17, 2000

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

*C. Michael Budlong* and *Campbell D. Barrett* filed a brief for the appellant (plaintiff).

*Richard Blumenthal*, attorney general, and *Priscilla J. Green*, assistant attorney general, filed a brief for the appellees (defendants).

*Opinion*

ZARELLA, J. The plaintiff, Mark Mosher, appeals from the judgment of the trial court dismissing his appeal from the administrative decision of the named defendant, Michael Kozlowski, the commissioner of motor vehicles (commissioner),[2] suspending his right to operate a motor vehicle for six months pursuant to General Statutes § 14-227b.[3] On appeal, the plaintiff

[2] The plaintiff also named as a defendant the department of motor vehicles hearing officer who presided at the plaintiff's license revocation hearing.

[3] General Statutes § 14-227b provides in relevant part: "(a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine and, if said person is a minor, his parent or parents or guardian shall also be deemed to have given his consent.

"(b) If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and thereafter, after being apprised of his constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that his license or nonresident operating privilege may be suspended in accordance with the provisions of this section if he refuses to submit to such test or if he submits to such test and the results of such test indicate that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight, and that evidence of any such refusal shall be admissible in accordance with subsection (f) of section 14-227a and may be used against him in any criminal prosecution, refuses to submit to the designated test, the test shall not be given; provided, if the person refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test as the test to be taken. The police officer shall make a notation upon the records of the police department that he informed the person that his license or

claims that the trial court improperly (1) made factual conclusions beyond the subordinate findings of fact made by the hearing officer and (2) found that his conduct constituted a refusal as contemplated by § 14-227b. We affirm the judgment of the trial court.

The following facts and procedural history are necessary to a resolution of this appeal. On July 18, 1998, the police received a complaint of a possible drunk

nonresident operating privilege may be suspended if he refused to submit to such test or if he submitted to such test and the results of such test indicated that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight.

"(c) If the person arrested refuses to submit to such test or analysis or submits to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicate that the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight, the police officer, acting on behalf of the Commissioner of Motor Vehicles, shall immediately revoke and take possession of the motor vehicle operator's license or, if such person is a nonresident, suspend the nonresident operating privilege of such person, for a twenty-four-hour period and shall issue a temporary operator's license or nonresident operating privilege to such person valid for the period commencing twenty-four hours after issuance and ending thirty days after the date such person received notice of his arrest by the police officer. The police officer shall prepare a written report of the incident and shall mail the report together with a copy of the completed temporary license form, any operator's license taken into possession and a copy of the results of any chemical test or analysis to the Department of Motor Vehicles within three business days. The report shall be made on a form approved by the Commissioner of Motor Vehicles and shall be subscribed and sworn to under penalty of false statement as provided in section 53a-157b by the arresting officer. If the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and shall state that such person had refused to submit to such test or analysis when requested by such police officer to do so or that such person submitted to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight. . . ."

driver traveling west on Route 156 in Old Lyme. The Connecticut registration reported by the complainant was assigned to a black Toyota Camry. Within minutes of the complaint, Officer Amy F. Jones of the Old Lyme police department observed a black Camry being driven west on Route 156 by the plaintiff, with the same registration as described in the complaint. Jones followed the plaintiff's vehicle for approximately two miles and observed it swerve outside its travel lane and onto the yellow center lines several times. Also, the speed of the plaintiff's vehicle was inconsistent, ranging between twenty and fifty miles per hour in a forty mile per hour zone, and there was no traffic that would have caused the speed variations.

Jones stopped the plaintiff's vehicle and questioned him. She detected an odor of alcohol on the plaintiff's breath and noticed that his eyes were very red and glassy. Jones asked the plaintiff whether he had been drinking, and the plaintiff responded that he had a drink at the casino. The plaintiff's speech was slurred and he stumbled when asked to step out of his car. Jones administered several field sobriety tests, and the plaintiff failed every test. When another officer arrived, the field tests were again administered with similar results. The plaintiff was arrested for operating a motor vehicle while under the influence of liquor and informed of his rights.

The plaintiff was taken to state police Troop F in Westbrook and was asked to submit to a breath test. The plaintiff agreed. The intoxilyzer machine was not working properly and the results would not print. The machine was cleared and a test was again attempted. The machine again malfunctioned. The plaintiff was asked to go to the Old Saybrook police department to submit to another breath test. The plaintiff refused to submit to the breath test at the other police station. The plaintiff's license was subsequently suspended for

his refusal to take a chemical alcohol test pursuant to § 14-227b.

The commissioner, through a duly appointed hearing officer, held a hearing to determine whether the plaintiff's license to operate a motor vehicle should be suspended pursuant to § 14-227b. The hearing officer found affirmatively that the plaintiff had refused to submit to a chemical test of the alcohol content of his blood subsequent to being charged with operating a motor vehicle while under the influence of intoxicating liquor and consequently suspended the plaintiff's license for six months.

The plaintiff appealed to the trial court pursuant to the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., which governs motor vehicle appeals. See General Statutes § 4-183; *Labenski* v. *Goldberg*, 33 Conn. App. 727, 732, 638 A.2d 614 (1994). The trial court issued a memorandum of decision dismissing the plaintiff's appeal.

I

The plaintiff claims first that the trial court improperly made factual conclusions beyond the subordinate findings of fact made by the administrative agency hearing officer. We agree.

"[T]he power of the trial court in appeals of this kind is very limited: [T]he Superior Court does not try the matter de novo; it is not its function to adjudicate questions of fact, nor may it substitute its own conclusions for those of the [commissioner]. . . . Its function is to determine only if the [commissioner] acted rationally and logically or illegally and in abuse of its discretion." (Citation omitted; internal quotation marks omitted.) *Kaplan* v. *Administrator, Unemployment Compensation Act*, 4 Conn. App. 152, 153, 493 A.2d 248, cert. denied, 197 Conn. 802, 495 A.2d 281 (1985).

The trial court, in this case, concluded that the evidence in the police report "provides more than conclusionary statements by the arresting officer that the driver failed to provide an adequate breath sample and, therefore, refused the test."[4] The hearing officer, however, made no findings concerning whether the plaintiff had intentionally failed to provide a sufficient breath sample. Further, the hearing officer made no findings that this contributed to her determination of the plaintiff's refusal. The commissioner's conclusion, that the plaintiff refused to submit to a test, was based on the plaintiff's refusal to submit to a breath test at the Old Saybrook police station after the intoxilyzer test at Troop F had malfunctioned. The commissioner made no other findings as to the refusal issue. The trial court, therefore, improperly substituted its own judgment for that of the commissioner with respect to a question of fact. General Statutes § 4-183 (j) ("court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact"); *Timber Trails Corp.* v. *Planning & Zoning Commission*, 222 Conn. 380, 400, 610 A.2d 620 (1992) (trial court is not to substitute its judgment for that of commission as to questions of fact); *Levinson* v. *Board of Chiropractic Examiners*, 211 Conn. 508, 536, 560 A.2d 403 (1989) (this principle is "keystone of administrative appeals");

---

[4] The trial court cited the portion of the police report that stated: "[The plaintiff] was asked to submit to a breath test to which he agreed. When instructed to blow into the mouthpiece with one steady breath, [the plaintiff] would not put the mouthpiece in his mouth as directed, puffed up his cheeks and only blew in many short breaths. After several minutes of instruction . . . the intoxilyzer malfunctioned and the results didn't print. The machine malfunction was cleared and [the plaintiff] again agreed to try the test again. At the second attempt, [the plaintiff] again puffed up his cheeks, blew only in short breaths and refused to put the mouthpiece in his mouth as instructed. After several more minutes of instruction . . . the intoxilyzer again failed to print. At this time, [the plaintiff] was asked to either submit to a urine test or go to the Old Saybrook police department to submit to another breath test on their machine, which he refused."

*Hansen* v. *Norton,* 172 Conn. 292, 294, 374 A.2d 230 (1977).

Having determined that the trial court impermissibly substituted its judgment for that of the commissioner, we must now decide whether the court's judgment should nevertheless be upheld. "Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, §§ 4-166 through 4-189), and the scope of that review is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the defendant. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement." (Citations omitted; internal quotation marks omitted.) *Shew* v. *Freedom of Information Commission,* 44 Conn. App. 611, 616–17, 691 A.2d 29 (1997), aff'd, 245 Conn. 149, 714 A.2d 664 (1998).

In this case, a sworn police report was offered at the administrative hearing that stated that the plaintiff refused to be tested on a different intoxilyzer machine at another police station. We therefore conclude that there was sufficient evidence before the commissioner to find that the plaintiff refused to comply with the request that he submit to a test of his blood alcohol content.

## II

The plaintiff also claims that the trial court improperly found that his conduct constituted a refusal as contemplated by § 14-227b. Because the plaintiff took the required blood alcohol test at Troop F, he asserts that his refusal to submit to another test at the Old Saybrook police station does not constitute a refusal as defined by § 14-227b. The plaintiff claims that § 14-227b should be narrowly construed to require only that a person submit to one test to indicate the ratio of alcohol in their blood. We disagree.

It is undisputed that the intoxilyzer machine at Troop F malfunctioned when testing the plaintiff. The plaintiff was then asked to submit to a breath test at another police station. Section 14-227b requires a person to submit to a chemical analysis of his blood, breath or urine. Under the plaintiff's desired interpretation, the requirements of § 14-227b would be satisfied by his submission to a test that yielded no results. Surely, the legislature did not intend such an irrational result. "In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Internal quotation marks omitted.) *Ciarelli* v. *Commercial Union Ins. Cos.*, 234 Conn. 807, 812, 663 A.2d 377 (1995).

The plaintiff claims that if the legislature had intended that there be a requirement to submit to multiple tests, it would not have used the singular word "test" in the statute. We disagree.

A test is defined as "an act or process that reveals inherent qualities . . . ." Webster's Third New International Dictionary. Thus, a result is a necessary part of a test. The only evidence presented to this court is that the machine malfunctioned and yielded no results.

We therefore conclude that the trial court did not improperly find that the plaintiff's conduct constituted a refusal as contemplated by § 14-227b.[5]

The judgment is affirmed.

In this opinion FOTI, J., concurred.

O'CONNELL, C. J., dissenting. I cannot concur with the majority decision.

The commissioner, through his hearing officer, found that the plaintiff refused to submit to a breath test at a different police station, believing that he had already performed a test.[1] The record shows that the plaintiff submitted to at least one, and possibly two, breath tests. It is clear that the equipment employed at state police Troop F malfunctioned and proved inadequate to furnish the police with a result that would effect a suspension of the plaintiff's operator's license. The plaintiff contends that, after submitting to two breath tests, he was not required to travel to another town to provide a third breath sample.

I am unable to find, in the plain language of the statute, any suggestion that, if the police are unable to complete their responsibilities due to defective equip-

---

[5] The dissent suggests that the plaintiff, despite having been arrested and in the custody of the police, should not be required to travel from the local police station to Old Saybrook to take a test. Neither the plaintiff nor the dissent offers any authority or analysis for this proposition.

[1] The hearing officer's subordinate findings of fact provide in relevant part as follows: "As the machine was not properly working, the [plaintiff] was requested to submit to a test at another station, which he refused, as he believed he had already performed a test. The record does not support the [plaintiff's] testimony."

The plaintiff testified as follows at the hearing:

"Q. [W]ere you asked to take a Breathalyzer test?

"A. Yes.

"Q. And did you agree to do so?

"A. Yes, I did. . . .

"Q. You took the test two times?

"A. Two times."

ment, an operator's license will be suspended if the operator refuses to be taken from one town to another in order that further testing might be conducted. The record supports a conclusion that the plaintiff refused to go from Troop F in Westbrook to Old Saybrook, but such conduct does not amount to a refusal within the statute. If a refusal to go from one town to another is to constitute the refusal referred to in the implied consent statute, this must be accomplished by the General Assembly and not by judicial construction. This court must construe the statute as it finds it without reference to whether the court feels that the law might have been improved by the inclusion of other provisions. *Houston* v. *Warden*, 169 Conn. 247, 252, 363 A.2d 121 (1975).

In *Bialowas* v. *Commissioner of Motor Vehicles*, 44 Conn. App. 702, 714–15, 692 A.2d 834 (1997), we held that "where it is undisputed that the motorist submitted to the chemical alcohol test, the fact that he failed to provide an adequate breath sample does not automatically constitute refusal within the meaning of [General Statutes] § 14-227b. Such refusal must be supported by substantial evidence. A conclusory statement by the arresting officer that the driver has failed to provide an adequate breath sample and has, therefore, refused, does not constitute such evidence."

There is insufficient evidence in the present case to support the hearing officer's decision that there had been a statutory refusal to take the test. In the present case, as in *Bialowas*, it is undisputed that the plaintiff orally consented to take a breath alcohol test. The plaintiff, in fact, actually submitted to two tests. At that point, the plaintiff had satisfied his obligations under § 14-227b (b). The plaintiff simply refused, however, to be taken to another town after the intoxilyzer at Troop F malfunctioned.

I am sympathetic with efforts strictly to enforce our operating under the influence laws. "Nevertheless, in

our endeavor to rid our roads of these drivers . . . we cannot trample on the constitutional rights of other citizens. They are entitled to a fair hearing. . . . An operator's license is a privilege that the state may not revoke without furnishing the holder of the license due process as required by the fourteenth amendment." (Citation omitted; internal quotation marks omitted.) Id., 718.

For the foregoing reasons, I respectfully dissent from the decision of the majority and would reverse the trial court's decision.